# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:07-CV-273-DCK

| | |
|---|---|
| WILLIAM WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MECKLENBURG COUNTY DEPARTMENT ) | |
| OF SOCIAL SERVICES; RICHARD ) | |
| JACOBSEN, DIRECTOR, and SONIA BUSH, ) | |
| in their INDIVIDUAL and OFFICIAL, ) | |
| CAPACITIES, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on *pro se* Plaintiff's "...Rule 44 Request For Judicial Notice Of Official Records" (Document No. 13), filed September 28, 2007; "Defendants' Motions To Dismiss Rule 12(b)(1) and (6)" (Document No. 14), filed October 4, 2007; Plaintiff's "Rule 15(d) Motion For Leave To Supplement Plaintiff's Rule 44 Request For Judicial Notice Of Official Records" (Document No. 21), filed October 26, 2007; "Plaintiff's Motion To Stay ... Leave To Amend..." (Document No. 22), filed November 30, 2007; Plaintiff's "Motion For Leave To File, and to Join Additional Parties for Plaintiffs' Verified Second Amended And Supplemented Complaint..." (Document No. 27), filed January 18, 2008; "Defendants' Brief In Opposition To Plaintiff's Motion For Leave..." (Document No. 28), filed February 4, 2008; and "Plaintiff's Reply To Defendants' Brief In Opposition To Plaintiff's Motion For Leave..." (Document No. 29), filed February 17, 2008. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition.

Having carefully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant</u> Defendants' motions to dismiss and <u>deny</u> Plaintiff's motions as moot. The Plaintiff's allegations do not form the basis of a federal lawsuit, and they must be dismissed under Rule 12(b) of the Federal Rules of Civil Procedure.

## I. PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, filed his "Initial Complaint..." (Document No. 1) on July 13, 2007 against Mecklenburg County Department of Social Services ("Defendant" or "DSS"), Richard Jacobsen, Director of DSS ("Jacobsen"), and Sonia Bush, a social worker at DSS ("Bush")(or collectively "Defendants"). On July 16, 2007, Plaintiff filed an amended "Complaint For Rule 57 Declaratory Relief, and Rule 65 Injunctive Relief" (Document No. 2). Then, on July 27, 2007, Plaintiff filed a "Motion For Leave To File ... First Amended Complaint ..." (Document No. 7). The Court granted Plaintiff's motion to file an amended complaint, noting that Defendants did not object, by "Order" (Document No. 11) dated August 10, 2007.

On September 28, 2007, Plaintiff filed his "...Request For Judicial Notice Of Official Records" (Document No. 13). On October 5, 2007, Defendants filed a memorandum (Document No. 16) opposing the request for judicial notice, as well as a motion with supporting memorandum (Document Nos. 14-15) moving for dismissal of the lawsuit pursuant to Fed.R.Civ.P. 12(b)(1) and (6). On October 20, 2007, Plaintiff filed a memorandum (Document No. 20) opposing the motions to dismiss.

On October 22, 2007, the undersigned granted "Defendants' Motion To Stay The Initial Attorneys' Conference" (Document No. 18), which had been consented to by Plaintiff, allowing the

parties to postpone the IAC until after the Court ruled on the motions to dismiss. (See Document No. 19).

On October 26, 2007, Plaintiff filed a "...Motion For Leave To Supplement Plaintiff's Rule 44 Request For Judicial Notice Of Official Records" (Document No. 21). On November 30, 2007, Plaintiff filed a "...Motion To Stay Ruling On Defendants' Request For Dismissal, or in the alternative, Leave To Amend And Supplement By A Date Certain" (Document No. 22), along with a memorandum in support (Document No. 23) and notice (Document No. 24) that the parties had conferred and Defendants objected to the motion.

The matter is now ripe and before the Court for decision. As suggested above, the principal focus of this order will be the Defendants' motions to dismiss.

## II. FACTUAL SUMMARY

In the introductory section of his Complaint, the *pro se* Plaintiff asserts that "[t]his is a constitutional challenge to the practices and policies of the Mecklenburg County Department of Social Services, Youth and Family Services Division . . . in relation to First, Fourth, Ninth, and Fourteenth Amendment protections contained in the U.S. Constitution for family privacy and parents' fundamental and basic civil rights." At its core, however, this lawsuit largely concerns a dispute between the Plaintiff and his ex-wife over the proper parenting of their teenage daughter and a passionate disagreement the Plaintiff has with the Mecklenburg DSS over its role and function, particularly as it pertains to its handling of a complaint of abuse made against him.

The facts alleged in the Complaint are lengthy, but they stem largely from a discreet series of events occurring in early July 2007 related to the Plaintiff's fifteen year old daughter. There does not appear to be any significant disagreement between the parties regarding either the underlying

facts involving the domestic dispute between Plaintiff and his ex-wife or Plaintiff's subsequent interactions with Defendants. As we must, in the context of a motion to dismiss, we assume the truth of the facts alleged in analyzing the Defendants' motions to dismiss.

Plaintiff alleges that his fifteen year old daughter ran away from the residence of his ex-wife, Marie Hager ("Hager"), in Gaston County on or about July 4, 2007. Plaintiff and Hager did not agree on strategies to help locate the child. The child was not located immediately and eventually returned to Hager's home sometime on July 9, 2007. On July 11, 2007, Defendant Bush of DSS contacted Plaintiff to investigate allegations DSS had received that the Plaintiff had abused his fifteen year old daughter. Defendants assert that a "referral" of abuse required an investigation of the Plaintiff by DSS pursuant to N.C.G.S. § 7B-302, which provides:

> When a report of abuse, neglect, or dependency is received, the director of the department of social services **shall make a prompt and thorough assessment**, using either a family assessment response or an investigative assessment response, in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition. **When the report alleges abuse, the director shall immediately, but no later than 24 hours after receipt of the report, initiate the assessment**. . . . The assessment and evaluation shall include a visit to the place where the juvenile resides . . . All information received by the department of social services, including the identity of the reporter, shall be held in strictest confidence by the department. However, the department of social services shall disclose confidential information to any federal, State, or local governmental entity or its agent needing confidential information to protect a juvenile from abuse and neglect. Any confidential information disclosed to any federal, State, or local governmental entity, or its agent, under this subsection shall remain confidential with the other governmental entity, or its agent, and shall only be redisclosed by the governmental entity or its agent for purposes directly connected

>with carrying out the governmental entity's or agent's mandated responsibilities.

N.C.G.S. § 7B-302(a) (emphasis added).

Consistent with the statute, Bush, in her capacity as a social worker with DSS, communicated with the Plaintiff about the complaint of abuse. She completed a "North Carolina Safety Assessment" on July 13, 2007, and Plaintiff attached a copy of that document to his "...First Amended Complaint...." (See Document No. 7-3, 7-6). In that assessment, Bush marked "yes" on two of the twelve listed factors that *may* be associated with a child being in immediate danger of serious harm. (Document No. 7-6). Specifically, Bush identified the following factors: "Caregiver leaves child alone" and "Caretaker(s) inappropriately disciplined child." Bush briefly described in the assessment that it had been "**alleged** that father inappropriately disciplined the child ... [and] **alleged** that father grabbed the child by the shoulder & slammed her to the wall" and that he had left the child unsupervised. Id. (emphasis added). The report concluded with Bush's description of safety interventions to be implemented. These included requiring that the father would assure the child is supervised at all times and that the father will practice appropriate discipline strategies. Id.

There is no evidence that the "North Carolina Safety Assessment" described above resulted in any court action, any charges against Plaintiff or his daughter, or any changes concerning Plaintiff's custodial rights related to his daughter. While the Plaintiff has made an attempt to describe the manner in which he was harmed by this process, Defendants contend, and the undersigned agrees, that Plaintiff has not effectively argued that he has suffered any real damages or incurred any real injuries as a result of Defendants' conduct. Nonetheless, the Plaintiff now seeks redress in federal court for the constitutional harm he alleges he has suffered. Interestingly, the

Plaintiff originally filed this lawsuit on July 13, 2007, the very date DSS completed the Safety Assessment.

In his Complaint, the Plaintiff alleges not only that DSS treated *him* unfairly, but also that more generally, the process followed by Mecklenburg DSS is unconstitutional. In a section entitled "The DSS Customs and Habits," the Plaintiff alleges that "**[e]very** complaint or allegation by the DSS against a parent affects or interferes with the substantive rights contained within the parent-child relationship." (Emphasis added). Making reference to other local cases handled by DSS that received media attention, the Plaintiff alleges that "DSS workers, as a practice, falsify records, evidence, or other data . . . for the purposes of interfering with and trampling upon parents' constitutional rights." The Plaintiff also makes references to reports allegedly critical of the Defendant Jacobsen during his time with another social services organization in California.

Plaintiff's Complaint is also highly critical of his ex-wife's care of the child, and of her allegedly false and bad faith reporting of abuse. The Plaintiff details at great length in his Complaint examples of Hager's alleged poor parenting practices. Representative of these allegations, he alleges that his ex-wife allowed young men "over the age of 18, and possibly 25 or older, to take 14 and 15 year old girls from her home," thus violating a North Carolina statute prohibiting a parent from allowing sexual acts upon a juvenile. He alleges that Hager "was negligent for enabling or encouraging the 15 year old child to be deviant, incorrigible, self-destructive, and undisciplined." He alleges Hager allowed their daughter to be "exposed to bloody imagery and messages encouraging self-mutilation, suicide, death, and other ominous themes." He alleges that the daughter had been drinking alcohol and shoplifting while in his ex-wife's care.

The Plaintiff also asserts in the Complaint that Hager repeatedly made false reports to DSS claiming the Plaintiff was not a fit parent and was guilty of abuse. The Plaintiff alleges that "[a]round 50 pages of documentation over various incidents within the last 18 months were presented to [Bush] demonstrating Marie Hager was facilitating false allegations from the child, while being negligent for enabling or encouraging" the child's deviant behavior. The Plaintiff alleges in the Complaint he told Bush that "the motivation for several allegations was a vindictive ex-wife, Marie Hager, who was facilitating an undisciplined out of control child." In essence, the Plaintiff accuses both Hager and their daughter of making false allegations against him with DSS.

In short, through this lawsuit, the Plaintiff asserts that his ex-wife, Marie Hager, is a poor parent to their fifteen year old daughter. He alleges with great passion that Hager allows their daughter, while in her care, to engage in sexual relations with older young men, to shoplift, to drink alcohol, and to view and be exposed to violent imagery and media. The Plaintiff asserts that Hager – and their daughter, at her urging – have caused repeated false accusations to be made against the Plaintiff with the Mecklenburg Department of Social Services, and that her motives in doing this were vindictive toward the Plaintiff. The Plaintiff also alleges that he – and routinely, others – have been treated unfairly by DSS.

With these allegations as the backdrop, the Plaintiff claims that the Defendants – and in particular the Mecklenburg Department of Social Services – violated his Constitutional rights by the manner in which they handled the events of July 2007. The question before the Court is not the dispute between the Plaintiff and Hager over the proper parenting of their fifteen year old. It is for this Court to decide today only the discreet question of whether this Complaint is properly in federal court.

## III. STANDARD OF REVIEW

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1),

> [t]he plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). As recently explained by the Supreme Court:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, ... [f]actual allegations must be enough to raise a right to relief above the speculative level....

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). The Supreme Court went on to hold that "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. The Supreme Court also added in another recent decision that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, **we are not bound to accept as true a legal conclusion couched as a factual allegation.**" Papasan v. Allain, 478 U.S. 265, 286 (1986)(emphasis added). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## IV. ANALYSIS

### A. Motion to Amend

First of all, Plaintiff has requested that the Court forbear reaching a decision on the motions to dismiss and allow him time to further amend and supplement his Complaint. (See Document Nos. 22-23).

The Federal Rules of Civil Procedure provide that

> ... A party may amend its pleading once as a matter of course:
> (A) before being served with a responsive pleading; or
> (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
> (2) **. . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave**. The court should freely give leave when justice so requires.

Fed.R.Civ.P. 15(a) (emphasis added).

In this case, Plaintiff has already twice amended his Complaint, without objection from

Defendants, who now oppose further amendment. The undersigned does not find any indication in the Plaintiff's motion for time to amend and supplement that a fourth complaint will be significantly different from the previous three. Plaintiff suggests that further amendment will "clarify the matters before the Court" and aid in a proper decision on the merits, but he offers no support for his reasoning. Because Plaintiff has had ample opportunity to state his claims, and has already done so at great length, the undersigned finds that the interests of justice do not require leave for further amendment. Instead, as set forth below, the Court is persuaded that Defendants' motions to dismiss are well-founded and should be granted.

**B.     Motions to Dismiss**

Plaintiff's "First Amended Complaint" (Document No. 7-3), summarized above, requests "declaratory relief as well as preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2201-2202, Fed. Rules of Civ. Proc. 57, 65, and for civil rights under 42 U.S.C. § 1983." (Document No. 7-3 at 1). Specifically, Plaintiff contends that Defendants' conduct interfered with his family life and religious expression, as well as trampling on his constitutional rights and violating his civil rights. Whatever label the Plaintiff may put on his lawsuit, it is apparent that the Plaintiff's case largely concerns a dispute with his ex-wife over the proper parenting of their teenage daughter and the passionate disagreement he has with DSS over its handling of complaints, particularly a complaint of abuse against him in July 2007. Put simply, the question for the Court is ultimately whether this matter belongs in federal court. The undersigned believes it does not.

The Defendants argue that this matter should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. It bears repeating that in considering such a motion,

> [t]he plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Here, because the parties are not diverse, the Plaintiff must rely on federal question jurisdiction to be properly in federal court. Consistent with the above, the Plaintiff has the burden of showing that subject matter jurisdiction – here, federal question jurisdiction – exists. The Plaintiff claims in the Complaint that Defendants violated his constitutional rights by the manner in which they handled the July 2007 complaint of abuse against him and, for that matter, by the manner in which they handle all such complaints. These allegations of constitutional violations, Plaintiff would argue, give rise to proper federal question jurisdiction. However, it is not the label applied by the Plaintiff, but rather the contents of the allegations, that matter in this inquiry. These allegations simply do not comprise a federal case.

The Plaintiff alleges flatly in his Complaint that "**every** complaint or allegation by the DSS against a parent affects or interferes with the substantive rights contained within the parent-child relationship." (Emphasis added). The Plaintiff takes the position that this matter, because it involves the parent-child relationship, is thus constitutional by nature and presents a federal question. This Court, however, has previously observed:

> The Fourth Circuit has held that "the sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment."

Hodge, supra, at 163. That Court has also held that "[t]he bonds between parent and child are, in a word, sacrosanct, and the relationship between parent and child inviolable except for the most compelling reasons." Jordan by Jordan v. Jackson, 15 F.3d 333, 343 (4th Cir. 1994). But "[t]he maxim of familial privacy is neither absolute nor unqualified, and may be outweighed by a legitimate governmental interest." Hodge, supra, at 163-64. "'**The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations.**'" Id., at 164 (quoting Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1993)).

Words of Faith Fellowship, Inc. v. Rutherford County D.S.S., 329 F.Supp. 2d 675, 685 (W.D.N.C. 2004) (emphasis added).

In that case, the Court faced a matter with admittedly very different facts, but nonetheless one in which a federal lawsuit had been brought against, among other Defendants, the Rutherford County Department of Social Services. In ruling that the complaint in that instance would survive a Rule 12(b)(6) motion, the Court nonetheless made the following telling point:

> Obviously, it is the Defendants' duty to interfere with the parent-child relationship under certain circumstances, and Defendants provide a necessary service to the community by doing so. But **the facts that Plaintiffs have alleged do not describe a legitimate DSS investigation** as much as they describe a campaign to drive a wedge between the parents and their children for obviously illegitimate reasons and by clearly unacceptable means.

Id. (emphasis added). In other words, that case survived dismissal under Rule 12(b)(6) in large measure because the allegations in the complaint were something very different from a routine abuse investigation.

Here, to the contrary, the undisputed evidence seems to suggest a very routine investigation – albeit one the Plaintiff did not like. The Mecklenburg DSS received a complaint of abuse by the Plaintiff involving his fifteen year old daughter. Consistent with the North Carolina statute cited

12

herein, an investigation was conducted. That investigation resulted in a positive finding on two of the twelve questions required to be addressed. The safety interventions to be implemented were straightforward – including that the child be supervised at all times and that appropriate discipline strategies be practiced – and did not result in any charges or changes in custody. As the Defendants correctly state in their brief, "[t]he Defendants have simply investigated an allegation of child abuse and set forth a safety plan for the child." (Document No. 15 at 10). No federal issue is presented here.

In further support of their argument to dismiss under Rule 12(b)(1), Defendants cite the Juvenile Code as set forth in Chapter 7B of the North Carolina General Statutes. In particular, N.C.G.S. § 7B-200(a) states that "[t]he court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." The statute defines "court" as "[t]he district court division of the General Court of Justice" – that is, *state* district court, not *federal* district court. N.C.G.S. § 7B-101(6). In North Carolina, child abuse and neglect cases are generally the province of the state courts. This is consistent with the general rule that federal courts do not become involved with domestic relations disputes. See Shaver v. Shaver, 799 F.Supp. 576, 577 (E.D.N.C. 1992) (citing Ex Parte Burris, 136 U.S. 586, 593-94, 34 L.Ed. 500 (1890)).

Furthermore, as cited above in the factual summary, N.C.G.S. § 7B-302(a) describes the steps the director of DSS should take upon receiving a report of abuse, as Defendants did in this case. Although Plaintiff clearly and understandably did not like being the subject of an investigation of abuse, he has not presented a coherent claim that Defendants violated any of their statutory duties *or* his constitutional rights. As previously observed, this appears to have largely been a routine abuse investigation handled consistent with the North Carolina statute. Plaintiff cites no persuasive

13

authority supporting his claim that Defendants have done anything wrong – or that, if they did, this matter is properly in federal court.

Finally, Plaintiff goes to some lengths in his Complaint lamenting Defendants' failure to pursue his own claims of neglect or abuse by Hager. These colorful allegations against Hager are set out in the factual summary herein. However, as Defendants point out in their motions to dismiss, "Plaintiff has the ability to make an appropriate referral of such neglect or undisciplined status to the Gaston County Department of Social Services, where the Plaintiff's ex-wife and his daughter reside." (Document No. 15 at 12). Put simply, Plaintiff does not present a persuasive argument that Mecklenburg County DSS could have, or should have, handled Plaintiff's defenses or counter-allegations in another manner.

In summary, while the Plaintiff pleads his case as a constitutional case presenting a federal question, it really is not. No doubt, the Plaintiff has a passionate belief both that his ex-wife has not properly parented their teenage daughter and that she has made false accusations to Mecklenburg DSS about him. He vehemently disagrees with the procedures of DSS – particularly as it pertains to their handling of the July 2007 complaint of abuse against him. These allegations by the Plaintiff may form the basis of a DSS complaint against his ex-wife in Gaston County, North Carolina. They might form the basis of a lawsuit in Mecklenburg County Superior Court, although the undersigned renders no judgment on that subject. The allegations do not however support a federal lawsuit.

The Defendants' motion to dismiss under Rule 12(b)(1) is <u>granted</u> due to a failure of subject matter jurisdiction. Because the matter is not properly in federal court, the Court declines to consider the Defendants' motion to dismiss under Rule 12(b)(6). All of the Plaintiff's motions are <u>denied as moot</u>.

## V.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendants' Motions To Dismiss Rule 12(b)(1) and (6)" (Document No. 14) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's "...Rule 44 Request For Judicial Notice Of Official Records" (Document No. 13);  "Rule 15(d) Motion For Leave To Supplement Plaintiff's Rule 44 Request For Judicial Notice Of Official Records" (Document No. 21); "Plaintiff's Motion To Stay ... Leave To Amend..." (Document No. 22);and Plaintiff's "Motion For Leave To File, and to Join Additional Parties..." (Document No. 27) are **DENIED AS MOOT**.

**SO ORDERED**.

Signed: August 18, 2008

David C. Keesler
United States Magistrate Judge